FILED
2010 Oct-19 PM 04:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

CHRISTINA M. TATE

    PLAINTIFF,

v.                                        CASE NO. CV-09-J-2588-S

BRIGHT FUTURE ELECTRIC,
LLC,

    DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is defendant Bright Future Electric's motion for summary judgment (doc. 18), defendant's evidentiary submissions in support of said motion (doc. 19), plaintiff's opposition to said motion (doc. 21), plaintiff's evidentiary submissions in support of said opposition (doc. 22), and defendant's reply (doc. 23). Having considered the motion and all other pleadings filed to date, the court finds as follows:

### Factual Background

Plaintiff Christina Tate ("Tate") was hired as an electrical apprentice by defendant Bright Future Electric ("BFE"), an electrical contractor, on April 2, 2007. Compl. ¶ 15. When Tate was hired by BFE, she told office personnel that she had Attention Deficit Hyperactivity Disorder (ADHD) or took medication for

ADHD, but did not request an accommodation for her ADHD. Compl. ¶¶ 18, 20; Tate Depo. 33–34.

Tate's job with BFE required her physical attendance at various job sites. Tate Depo. 41. During her term of employment with BFE, Tate was arrested and missed one to two weeks from work as a result of an incident with the police. Tate Depo. 36, 39–42.  She also missed more than two days of work when she attempted to join the military. Tate Depo. 48–51.

In January 2008 management personnel at BFE told Tate to stop missing work. Tate Depo. 39–42, 50–51.  An employee discipline form dated January 22, 2008, and signed by Tate and general supervisor Joe Cason ("Cason") indicates that she was warned about "Absenteeism/Tardiness," and indicates she missed work from January 9, 2008, to January 23, 2008. Doc. 18 Exh. C. Tate was allowed to return to work following this absence; McCain states this is because she asked for forgiveness following her absence. Tate Depo. 39–40; McCain Depo. 38–39.

Tate worked on a project with supervisor Brian Wilson ("Wilson") from approximately December 2007 to March 2008. Compl. ¶ 21. Tate claims that there were no problems and that Wilson told her she was "doing a great job." *Id*. Wilson stated that Tate was a good employee but became unruly and disruptive

without close supervision. Wilson Depo. 8–9.

On March 12, 2008, Tate was reportedly taking a new medication prescribed by Dr. Thomas Shafer ("Dr. Shafer"). Tate Depo. 43. Tate's mother called BFE and told personnel there that Tate was on new medication that made her lethargic and she would be coming into work late, if at all. Compl. ¶ 22; Tate Depo. 42–43.[1] Tate did arrive late to work that day. Wilson met her at the job site parking lot, completed an employee discipline form related to events occurring the previous workday, had Tate sign it, and instructed her to go see the general supervisor, Cason, as Wilson no longer wanted her on his job site. Wilson Depo. 11–16. The employee discipline form reads as follows:

> Christina has not responded to repeated verbal warnings for tardies and unsafe work habits. Her behavior on Tuesday 3/11/08 was considered by me to be disruptive to the point of being counterproductive to job. When questioned as to whether she takes this job seriously she responded that she does, "that she rather laugh than get mad," when responding to constructive criticisms and or reprimands.

Doc. 18 Exh. D. Tate disputes that there was any incident during this period in which her behavior was disruptive. Tate Depo. 93.[2] Wilson also allegedly wrote a

---

[1]The complaint states that Tate's mother called BFE for her on March 11, 2008, and that she came into work on time on March 12, 2008. Compl. ¶¶ 22–23. However, in her deposition, Tate testified that the date of her mother's call was March 12, 2008. *See* Tate Depo. 42–43.

[2]Tate alleges that the only "unsafe work habit" in which she engaged was sitting on top of ladders, which all the other employees at Tate's job site did as well. Tate Depo. 24–25, 75–77. Tate argues that those other employees were neither disciplined nor terminated for that behavior.

note stating: "Christina shows promise as an employee, and has apparently had a change of medication that may be cause of problems on Tuesday 3-11-08. I would recommend the counseling option first for disciplinary action." Doc. 21 at Exh. 12 to Cason/McCain Depos.

When Tate arrived at Cason's office, Cason noticed that she appeared to be in a state unfit for work. Cason Depo. 22–23. When Tate explained that she was hyperactive and on new medication, Cason instructed her to have her physician send him a note showing that she was able to safely return to work. Cason Depo. 21–23, 26, 72. Tate alleges that she was fit to work on that day. Tate Depo. 35–36. Nevertheless, Tate had Dr. Shafer prepare the requested note. Dr. Shafer's office had problems faxing the letter to BFE, so Tate's sister reportedly obtained the note and took it to BFE by hand. Tate Depo. 44; Cason Depo. 67–68; Daigneault Aff. Although the fax was originally directed "Attn. Joe," Cason states he never saw the letter. Cason Depo. 67–68. Instead, Tate's sister gave the fax to McCain. McCain Depo. 25–27; Tate Depo. 84. The note was dated March 13, 2008, and read as follows:

> I have followed Ms. Christina Tate since 06/13/07 for ADHD,

---

*Id.* at 78. Moreover, Tate states that other employees engaged in unsafe work habits–such as working on live wire, resulting in electric shock–and were neither written up nor terminated. *Id.* at 78–79.

>  hyperactive type. Her current medication is:
>
>  Adderall 20 mg. – 1 ½ to 2 tabs each morning and ½ - 1 tablets each afternoon
>
>  ADHD has a number of symptoms such as increased motor activity, restlessness, and fidgeting. Her medication is to help improve her concentration and those symptoms. Since I am not trained in industrial medicine, if you had specific questions, please have your company physician evaluate whether she is safe for her particular job.

Doc. 18 Exh. E. Tate states that her symptoms are better with medication, and that when she is on her medication, she is able to do her work. Tate Depo. 66–67.

Cason reportedly told Tate BFE would let her know when she could return to work.[3] Compl. ¶ 27; Tate Depo. 27, 73. Moreover, Tate states that she called Cason on several occasions to determine her work status, but he would not return her call.[4] Compl. ¶ 30; Tate Depo. 27, 84. It is undisputed that Tate was never informed of her work status. Compl. ¶ 29; Cason Depo. 28; Tate Depo. 73, 84.

Tate missed work from March 13, 2008, to the date she was terminated, March 19, 2008, and BFE had no record or knowledge of Tate's whereabouts

---

[3] This fact is in dispute. Cason alleges that he instructed Tate to return to work after she obtained the doctor's excuse. Cason Depo. 27. Taking the evidence in the light most favorable to the plaintiff, this court accepts Tate's interpretation of the conversation.

[4] Cason admits that Tate left a number with him, but stated that after making attempts to get in contact with her, he could not. Cason Depo. 47. McCain does not have personal knowledge of the conversation between Tate and Cason, but he assumed Tate would come back to work after she received the doctor's note, and did not know why she did not return. McCain Depo. 30–31, 35, 43.

during that time. It has since become apparent that on March 18, 2008, Tate was in court in Pell City, Alabama, for a scheduled trial related to a January 6, 2008, arrest at a Waffle House for disorderly conduct. Doc. 18 Exh. F.

Tate's employment was terminated on March 19, 2008 for being "late for work, not coming in at all, unsafe work habits, disruptive at work" by Cason and McCain. Doc. 18 Exh. G; Cason Depo. 18–21, 27–28; McCain Depo. 30–36. During her fifty weeks of employment, Tate missed approximately fifty-five days of work. Laura McCain Aff. BFE's Employee Handbook provides that an employee may be terminated, at the company's discretion, for "[f]requent short-term absences and/or lateness in violation of company rules" and for "[a]bsence from work for two . . . consecutive scheduled workdays without notifying the company." Doc. 18 Exh. B at 14. Furthermore, "[f]ailure to return to work within two . . . consecutive scheduled workdays after being released for duty by a doctor" may lead to disciplinary action. *Id.* BFE claims it gave Tate the benefit of the doubt as to her intentions on returning to work, giving her seven days after her last day at work before making the decision to terminate her. McCain Depo. 42–43.

On June 9, 2008, Tate filed an EEOC charge and lawsuit claiming that she was terminated due to an alleged impairment or disability, namely ADHD. Compl. ¶ 4; Tate Depo. 72–73. Tate received her Notice of Suit Rights from the EEOC on

6

September 28, 2009.  Compl. ¶ 4; Doc. 21 Exh. 4. On December 13, 2009, Tate filed this action, alleging that the termination practices of BFE violated the American with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.* Compl. ¶ 1.

## Standard of Review

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law.  *See* FED. R. CIV. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The facts, and any reasonable inference therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970). Once met by the moving party, however, the burden shifts to the nonmovant to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).  A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990).

## **Legal Analysis**

The ADA prohibits an employer from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[5]

In order to establish a prima facie case of employment discrimination under the ADA, a plaintiff must demonstrate that: "(1) [she] has a disability; (2) [she] is a "qualified individual," [meaning that she is] able to perform the essential functions of the employment position . . . with or without reasonable accommodation; and (3) the defendant unlawfully discriminated against [her] because of the disability." *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1226 (11th Cir. 2005) (quoting *Reed v. The Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000)). *See also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); *Rossbach v. City of Miami*, 371 F.3d 1354, 1356–57 (11th Cir.

---

[5] All of the conduct alleged in Tate's complaint occurred prior to the effective date of the 2008 amendments to the ADA. *See* ADA Amendments Act of 2008 (ADAAA), Pub.L. No. 110-325, 122 Stat. 3553 (2008) (becoming effective January 1, 2009). Tate has not asserted that the Act should be applied retroactively; therefore, the court will not address the possible retroactivity of the ADAAA, and will apply the ADA as it existed before the amendments. *See Dickey v. Dollar Gen. Corp.*, 351 Fed.Appx. 389, 391 n.3 (11th Cir. 2009); *Fikes v. Wal-Mart, Inc.*, 322 Fed.Appx. 882, 883 n.1 (11th Cir. 2009) (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994)).

2004). If a plaintiff is successful in establishing her prima facie case, she has created a presumption of discrimination, and the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its employment action. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (citing *Wascura v. City of South Miami*, 257 F.3d 1238, 1242–43 (11th Cir. 2001)); *see also McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008) (applying the same standard in a Title VII case); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (same). Once the defendant produces such a reason, the burden shifts back to the plaintiff to prove that the defendant's reason was pretextual and that defendant intentionally discriminated against her because of her disability. *Cleveland*, 369 F.3d at 1193; *Wascura*, 257 F.3d at 1243; *see also McCann*, 526 F.3d at 1373. *Cf. Gambrill v. Cullman County Bd. of Educ.*, 2010 WL 3401888 (11th Cir. Aug. 31, 2010) (providing for a similar burden-shifting framework under the Uniformed Services Employment and Reemployment Rights Act, but placing the burden of proof on the defendant-employer).

The court finds that plaintiff has failed to establish a genuine issue of material fact regarding whether she has a disability within the meaning of the ADA, or whether defendant's legitimate, nondiscriminatory reason was pretextual.

Thus, plaintiff's claim fails as a matter of law and defendant's motion for summary judgment is due to be granted.

A "disability" is defined by the ADA as: "(A) a physical or mental impairment that substantially limits one or more . . . major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The EEOC has further defined "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Greenberg*, 498 F.3d at 1264 (quoting 29 C.F.R. § 1630.2(i)). In determining whether an individual is "substantially limited," the court considers: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Sutton v. Lader*, 185 F.3d 1203, 1208–09 (11th Cir. 1999) (emphasis omitted) (citing 20 C.F.R. § 1630.2(j)(2)). A plaintiff must offer evidence "that the extent of the limitation . . . caused by [her] impairment . . . is substantial." *Toyota Motor Mfg., Kentucky, Inc., v. Williams*, 534 U.S. 184, 198 (2002), *partially superceded by statute*, ADA Amendments Act of 2008 (ADAAA), Pub.L. No. 110-325, 112 Stat. 3553. "[W]hether a person has a disability under the ADA is an individualized inquiry,"

determined on a case-by-case basis. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999). Furthermore, in making this inquiry, the court is to keep in mind that "the ADA's coverage is restricted to only those whose impairments are not mitigated by corrective measures." *Id.* at 487.

Tate argues that her ADHD substantially limits her ability to sleep, and thus, that she is disabled for the purposes of subsection (A). However, even if this court were to hold that sleeping is a major life activity, an individualized inquiry into Tate's alleged condition shows that she is not disabled within the meaning of the ADA.

First, Tate fails to provide concrete evidence of the extent of her limitation. Instead, her allegations of sleeplessness are based only on medical diagnoses of restlessness, fidgeting, and "poor sleep," which is not enough evidence to create an issue of fact regarding her disability. *See Williams*, 534 U.S. at 198 ("It is insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment."); *Rossbach*, 371 F.3d at 1359 (holding that an employee who walks, sits, stands, and sleeps moderately below average is not disabled under the ADA). Furthermore, Tate's own testimony shows that her symptoms are better with medication and that she is able

"to do what [she] need[s] to do, work" with medication. Tate Depo. 66–67.[6]

Tate's mere use of the medication does not prevent her claim; rather, because Tate's use of medication allows her to perform "major life activities" without substantial limitation, she is not disabled under subsection (A) of the ADA. *See* 42 U.S.C. § 12102(2)(A).

The conclusion that plaintiff has failed to prove she is disabled under subsection (A) of the disability definition does not end the court's inquiry. Under subsection (C), an individual who is "regarded as" disabled by his or her employer qualifies as disabled for purposes of the ADA. *See* 42 U.S.C. § 12102(2)(C). "As with actual disabilities, a perceived impairment must be believed to substantially limit a major life activity of the individual." *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1230 (11th Cir. 1999).

Tate claims that BFE regarded her as being disabled because she showed up for work "real nervous and jittery" and Cason stated that he "couldn't send her out to a job site like that." Pl.'s Memorandum at 14. However, even taken in the light

---

[6]Tate's testimony was as follows:
    Q: Are those symptoms better or worse with medication?
    A: They are better.
    Q: Does the ADHD in any way prevent you from caring for yourself?
    A: When I'm not on medication, I do have problems. As long as I'm on medication, I'm able to do what I need to do, work.
*See* Tate Depo. 66–67.

most favorable to the plaintiff, Tate's temporary condition and Cason's subsequent reaction does not prove that BFE regarded Tate as having a substantially limiting disability. Although Cason may have believed that Tate's condition on that particular day limited her ability to be sent to the job site and to perform her job that day, there is no evidence that he or BFE believed that the condition was persistent as to substantially limit Tate for any extended period of time. Cason's knowledge that Tate was hyperactive and on a new medication does not affect or change this result; at best, the evidence shows that Cason believed Tate was having an adverse reaction to the new medication.

Even if plaintiff could prove her prima facie case, this court finds that BFE had a legitimate, nondiscriminatory reason for Tate's termination, and that plaintiff has failed to establish a genuine issue of material fact as to whether defendant's reason was pretextual.

To establish a legitimate, nondiscriminatory reason to rebut a plaintiff's prima facie case, an employer "must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Rice-Lamar v. City of Ft. Lauderdale, Fla*, 232 F.3d 836, 843 (11th Cir. 2000); *Joshi v. Fla. State Univ. Health Ctr.*, 763 F.2d 1227, 1233 (11th Cir. 1985). The defendant must "produce admissible evidence which would allow the trier of fact to rationally

conclude that the employment decision had not been motivated by discriminatory animus." *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981); *Johnson v. City of Mobile, Ala.*, 321 Fed.Appx. 826, 830 (11th Cir. 2009); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). The defendant's explanation for its reasons "must be clear and reasonably specific," *Burdine*, 450 U.S. at 258; the defendant must "present specific evidence regarding the decision-maker's actual motivations with regard to each challenged employment decision." *Walker v. Mortham*, 158 F.3d 1177, 1181 n.8 (11th Cir. 1998) (citing *IMPACT v. Firestone*, 893 F.2d 1189, 1193–94 (11th Cir. 1990)).

BFE alleges that it terminated Tate due to excessive tardies and absences throughout her employment.[7] It is clear from the facts that throughout her employment with BFE, Tate established a sporadic and unpredictable attendance record. She missed approximately fifty-five days of work throughout her fifty weeks of employment. On multiple occasions, Tate missed work without calling a supervisor per the requirements in the Employee Handbook. BFE provides

---

[7]Plaintiff's notice of termination listed additional reasons for her termination. *See* Doc. 18 Exh. G. However, defendant need only produce one legitimate, nondiscriminatory reason for plaintiff's termination. Since Tate disputes that she was disruptive or engaged in unsafe work habits, defendant's summary judgment motion focuses on her absenteeism and tardiness.

evidence of a series of disciplinary actions regarding Tate's attendance problems, gradually leading up to her termination. BFE acted within its discretion in terminating Tate. *See* Doc. 18 Exh. B at 14 (Employee Handbook) ("Chronic, habitual, or excessive absenteeism or lateness, as judged by the company, at its discretion, may result in disciplinary action, up to and including termination."). This is enough evidence to satisfy BFE's burden of production.

Since BFE has produced evidence of a legitimate, nondiscriminatory reason for Tate's termination, the burden shifts to Tate to prove that BFE's reason was pretextual and it intentionally discriminated against her because of her disability. *See Cleveland*, 369 F.3d at 1193; *Wascura*, 257 F.3d at 1243. "A reason is not [a] pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Johnson*, 321 Fed.Appx. at 830 (emphasis omitted) (quoting *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006)). "[The] employee must meet [the defendant's] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Johnson*, 321 Fed.Appx. at 830–31 (quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*)). The court should focus on "[d]efendant's perception of the facts available to him at time of decision . . . ." *Melton v. Nat'l Dairy, LLC*, 705 F. Supp. 2d 1303, 1320

(M.D. Ala. 2010) (citing *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1220 (10th Cir. 2007) ("A pretext argument requires the court to examine the facts as they appear to the person making the decision, to determine whether the employer honestly believed those reasons and acted in good faith upon those beliefs.") (quotation marks omitted)); *see also Jones v. Ala. Power. Co.*, 2007 WL 3496720, at *8 (M.D. Ala. Nov. 14, 2007).

Tate argues that the inconsistencies between her story and Cason's is sufficient to create a genuine issue of material fact regarding whether BFE's reason for her termination was pretextual. Moreover, Tate argues that because BFE allowed her to return to work following her lengthy absence in January 2008, it should have allowed her to return following her absence in March 2008. Because this second absence and resulting termination occurred only after BFE had knowledge of her alleged disability, Tate believes BFE discriminated against her because of that disability. Pl.'s Memorandum at 20–21.

The court finds that plaintiff has failed to meet her burden as a matter of law. Tate exhibited pervasive attendance problems throughout her term of employment with BFE which were a violation of company policy. Tate did not dispute that she was often absent or tardy. She had been warned at least once about her absenteeism and tardiness before BFE became aware of her alleged disability.

See *Wofsy v. Palmshores Retirement Cmty.*, 285 Fed.Appx. 631, 635 (11th Cir. 2008) (affirming summary judgment where plaintiff had received warnings prior to employer's knowledge of plaintiff's disability). While the temporal proximity between BFE's knowledge of her disability and her termination may be probative of pretext, BFE properly exercised its discretion in terminating her.[8]

Moreover, even if BFE was mistaken regarding Tate's reasons for being absent during the period from March 13 to March 19, 2008, Tate has failed to provide any evidence of actual discriminatory intent on BFE's part. See *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1260–61 (11th Cir. 2001) (noting that a plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by unlawful discrimination); *Johnson*, 321 Fed.Appx. at 830 ("[Plaintiff must show] both that the [defendant's] reason was false, and that discrimination was the real reason."). Tate has not presented evidence of any other employees who were also frequently absent or tardy but were not terminated; similarly, she has not shown that BFE has a practice of discriminating against employees with disabilities. She has provided no evidence that BFE treated her any differently than they would have treated other

---

[8] *See* Doc. 18 Exh. B at 14. Tate argues that the catalyst for her termination was her absence between March 13 and March 19, 2008. However, she provides no evidence that her termination was not based on her history of absences and lateness.

pervasively absent or tardy employees.[9]

Thus, viewing the evidence in the light most favorable to the plaintiff, this court finds that plaintiff has failed to establish a genuine issue of material fact regarding whether she has a disability within the meaning of the ADA, or whether defendant's legitimate, nondiscriminatory reason was pretextual. Therefore, plaintiff's claim fails as a matter of law and defendant's motion for summary judgment is due to be granted.

## Conclusion

Having considered the foregoing and finding that the plaintiff has failed to establish a genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that defendant's motion for summary judgment (doc. 18) be and hereby is **GRANTED**.  The court shall so rule by separate order.

**DONE** and **ORDERED** this 19th day of October 2010.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

---

[9]The fact that BFE allowed Tate to return to work following her January 2008 absence but did not do the same in March 2008 is immaterial. BFE provided evidence that it allowed her to return in January because she apologized and asked for forgiveness. Tate has neither rebutted this evidence, nor provided anything to suggest that the aggregation of these absences is not what led to her termination.